HIRAM HINES *vs.* LUCIUS ROBINSON & another. ·

Winslow Hall conveyed to Ephraim Gammon and Ira Bartlett each, "one undivided half of certain land ... being the 'mill privilege,' so called, ... the same on which Hall's saw-mill now stands, being a part of lot nine, range five," and described by metes and bounds. Gammon & Bartlett erected a grist-mill on the same dam, whereupon Gammon conveyed to the plaintiff "one undivided half of a saw-mill and grist-mill, and one undivided half of the privilege on which the mills stand, being part of lot nine, range five, and containing what was conveyed to me by Winslow Hall's deed." Thereafterwards, the plaintiff conveyed to Horace Bartlett "one undivided half of a saw-mill, and one undivided half of the saw-mill privilege on which the saw-mill stands, being part of lot nine, range five, ... containing what was deeded to me by Ephraim Gammon. . . . For a more full description see Winslow Hall's deed to said Gammon, to which reference is hereby made;" which last deed embraced the land on which the grist-mill stands; *Held,* that one undivided half of the grist-mill passed by the plaintiff's deed to Horace Bartlett.

A grantor who has conveyed a good title by his deed of warranty, may, nevertheless, set up against his grantee and those holding that title, a title subsequently acquired by himself by disseisin of his original grantee or those holding under him.

What facts will sustain such a title by disseisin.

One tenant in common is liable to an action by his co-tenant for an injury to the common property.

Where the common property consists of a grist-mill, the erection of an excelsior mill in such proximity thereto as to darken the grist-mill and prevent access to its underworks, and the use of the yard in front of it as a place for the piling of lumber to the exclusion of customers, constitute such an injury.

So one tenant in common may maintain an action against his co-tenant and a stranger for using water for another mill which rightfully belongs to the common mill.

Where the plaintiff and one of the defendant's predecessors in title, being tenants in common of a grist-mill and saw-mill on the same dam, were careful to leave at least four and one-half feet of water in the reservoir-pond, for the exclusive use of the grist-mill from 1841 to 1847, when the plaintiff's co-tenant conveyed his undivided half of the saw-mill and its privileges to a grantor of the defendant, reserving all the water in the reservoir-pond when not more than four and one-half feet deep, and received back a bond conditioned that the grantee would not use, or cause to be used, any water in the pond for running the saw-mill when the water was less than four and one-half feet deep; and no attempt to otherwise use the water until 1865; *Held,* that the proprietor of the grist-mill was entitled to the exclusive use of the water when it was not more than four and one-half feet deep.

A construction of a grant of a water-power which will restrict the grantee to the specific use to which the water was applied when the grant was made, will never be adopted unless the language of the grant unmistakably indicate such to have been the intention of the parties.

ON REPORT.

CASE for infringing certain water rights of the plaintiff, and erecting an excelsior mill in such proximity to the plaintiff's grist-mill as to darken it, prevent repairs, reconstruction, or enlargement of it, &c.

On the 23d of July, 1835, Winslow Hall, owning a mill-privilege, consisting of a saw-mill situate on a dam across the outlet of Buggernut pond, near its mouth, the dam at the mouth, and the surrounding land, by his deed of warranty, of that date, conveyed to Ira Bartlett " one undivided half part of a certain piece of land situated in said Hartford, being the mill-privilege, so called, situated near Hall's dwelling-house, and the same on which said Hall's saw-mill, now conveyed, now stands, being a part of lot No. 9, in the 5th range of lots in Hartford, and bounded as follows," &c. ; "beginning," &c. Here follows metes and bounds which embrace several acres of land, with the dam, saw-mill, and mill-pond in the middle. " Also, one-half the right to flow the other lands belonging to said

Hall, lying above said privilege, to any extent necessary for the use of the mill on the privilege now standing, or any other that may be built thereon," &c.

On the 13th of Aug., 1835, Hall conveyed the other half to E. B. Gammon.

Some time during the joint ownership of Bartlett & Gammon, between Aug. 15, 1835, and March 30, 1841, they erected the grist-mill now standing on the same dam with the saw-mill.

On March 30, 1841, Gammon, by his deed of warranty, conveyed to the plaintiff " one undivided half of a saw-mill and grist-mill situated in Hartford, and one undivided half of the mill-privilege on which the said mills stand, being part of lot No. 9, in the 5th range of lots in said Hartford, containing what was deeded to me by Winslow Hall, of said Hartford, by deed dated Aug. 30, 1835."

On May 17, 1843, the plaintiff, by his deed of warranty, conveyed to Horace Bartlett " one undivided half of a saw-mill situated in said Hartford, and one undivided half of the saw-mill privilege on which the said saw-mill stands, being part of 'lot No. 9, in the 5th range of lots in said Hartford, containing what was deeded to me by Ephraim B. Gammon, by his deed dated March 13, 1841; for a more full description see Winslow Hall's deed to the said Gammon, dated Aug. 30, 1835, to which deed reference is hereby made."

On March 11, 1845, Horace Bartlett, by his deed of warranty, conveyed to Harvey Bartlett " one undivided half of a saw-mill in Hartford, and one undivided half of the saw-mill privilege on which the said saw-mill stands, being part of lot No. 9, in the 5th range, &c., containing what was deeded to me by Hiram Hines, by his deed dated May 7, 1845; for a more full description, see E. B. Gammon's deed to Hiram Hines, of March 30, 1841."

On May 13, 1847, Ira Bartlett, by deed of warranty, conveyed to the plaintiff and Rufus Woodsum " one undivided half of a grist-mill, . . . and one undivided half of the grist-mill privilege on which the said grist-mill stands, being part of lot No. 9, in the 5th range, with the exclusive right of the water when it is no more than four

feet and one-half foot high in the flume at the upper dam, the privilege of flowing, and so forth. For a more particular description, reference being had to a deed from Winslow Hall to Ira Bartlett, dated July 23, 1835."

On May 13, 1847, Ira Bartlett, by deed of warranty, conveyed to Harvey certain premises, adopting the precise language *mutatis mutandis* in describing them as is used in Winslow Hall's deed of July 23, so far as the same is copied in this report; and then it adds, " excepting and reserving the grist-mill and one-half the use of the mill-yard, and also reserving all the water in the pond when it is below four feet and one-half foot in the flume at the upper dam, except from 1st of March to the 1st of May in each year. The intent this deed is to convey one undivided half part of the saw-mill and its privileges."

On the same day, Harvey Bartlett executed and delivered to Hiram Hines and Rufus Woodsum a bond in the penal sum of $500, conditioned that he would not " use, or cause to be used, any water in the mill-pond for running his saw-mill, from the first of May to the first of March following, in each and every year, unless the water in the upper dam is more than four feet and one-half foot deep."

On April 4, 1859, Rufus Woodsum quitclaimed his interest in " one undivided half of a grist-mill situated in Hartford, and one undivided half of the grist-mill privilege on which the said grist-mill stands," to A. G. Tinkham, who, on Jan. 2, 1861, quitclaimed same to defendant, Corliss.

On Sept. 14, 1863, Harvey Bartlett quitclaimed to both defendants certain premises, adopting the language of the Winslow Hall deed, and " for a more particular description reference is made to a deed from Ira Bartlett to Harvey Bartlett, dated May 13, 1847, and from Horace Bartlett to Harvey Bartlett."

*E. G. Harlow & G. D. Bisbee*, for the plaintiff.

On the construction of the deed, cited 2 Wash. on Real Prop. 619, §§ 36, 37; *Ricker* v. *Barry*, 34 Maine, 116.

*W. W. Virgin*, for the defendants.

BARROWS, J.    ACTION ON THE CASE.    The plaintiff alleges in his writ, that he is the owner of an undivided half of a grist-mill and privilege, and all the appurtenances thereto belonging, including the right to raise a head of water necessary for the same, by means of the upper dam on the outlet of Buggernut pond, and the right to "all the water in said pond, except so much as shall be actually needed and used by a certain saw-mill there situated; and the exclusive right to all the water in said pond when the water is no more than four feet and six inches high in the flume of the said upper dam;" that Nathaniel W. Corliss, one of the defendants, is the owner of the other undivided half of said grist-mill, its privileges and appurtenances, and also, with the other defendant, Robinson, owns the saw-mill above referred to; that Robinson and Corliss have erected a building on the privilege, so placed and constructed as to darken the grist-mill and obstruct its use, and prevent repairs, reconstruction, or enlargement of it, and have placed in this new building certain excelsior machines and a shingle machine, which they run in addition to their saw-mill, using the water so as to infringe the exclusive right of the grist-mill above asserted, and to prevent any profitable use of the grist-mill.    The erection of a building in close proximity to the grist-mill, and the use of the water when there was less than four feet and a half in the flume, for the purpose of running the additional machinery, are admitted by the defendants.

They deny the plaintiff's title, and claim the right to do what they have done without subjecting themselves to an action.

If the plaintiff can maintain a suit against any person for doing these acts, the fact that one of these defendants is his co-tenant in the property injured, will not bar the action.

*Blanchard* v. *Baker*, 8 Maine, 253.    See also, *Maddox* v. *Goddard*, 15 Maine, 218, where Shepley, J., remarks as follows : " One general principle may be clearly discovered in all these authorities, that when a tenant in common does an unlawful act whereby his co-tenant is injured, the law affords the appropriate remedy arising out of the nature of the property or estate, and the character of the wrongful act."

The appropriate remedy for such an injury as the plaintiff here alleges is an action of trespass on the case.

Indeed, the defendants' counsel do not appear seriously to rely upon the fact of the co-tenancy in defense; but claim that, upon a correct construction of the deeds which make part of the case, and upon such other evidence as is legally admissible, the plaintiff shows no title.

On the 23d of July, 1835, Winslow Hall owned the whole privilege, and conveyed to Ira Bartlett an undivided half of it, describing it as " being the mill-privilege, so called, situated near said Hall's dwelling-house, and the same on which said Hall's saw-mill now stands, being a part of lot number nine, in the fifth range of lots in Hartford, and bounded as follows, viz.: beginning," &c.; also, " one-half the right to flow the other lands belonging to said Hall, lying above said privilege, to any extent necessary for the use of the mill on the privilege now standing, or any other that may be built thereon," with sundry other rights not material to the proper understanding of the questions here raised. Hall conveyed the other undivided half of the same property, with like rights, to Ephraim B. Gammon on August 13, 1835. It appears that Ira Bartlett and Gammon built a grist-mill on the privilege, and Gammon conveyed to the plaintiff, March 30, 1841, by deed duly recorded the next day, " one undivided half of a saw-mill and grist-mill situated in said Hartford, and one undivided half of the mill-privilege on which the said mills stand, being part of lot No. 9, in the 5th range of lots in said Hartford, containing what was deeded to me by Winslow Hall of said Hartford, by deed dated August 30, 1835, except a piece sold to Samuel Alley, jr., and occupied by him, with a tan-yard and. shop and bark-house."

On the 17th of May, 1843, the plaintiff conveyed to Horace Bartlett " one undivided half of a saw-mill situated in said Hartford,. and one undivided half of the saw-mill privilege on which the said/ saw-mill stands, being part of lot numbered nine, in the fifth range: of lots in said Hartford, containing what was deeded to me by Ephraim B. Gammon, of said Hartford, by his deed dated March 30th,

1841. For a more full description, see Winslow Hall's deed to the said Gammon, dated August 30, A. D. 1835, to which deed reference is hereby made."

We find no rule of construction under which this deed can be held to convey anything less than the whole estate which Hines acquired, through E. B. Gammon, from Winslow Hall, to whose deed to Gammon reference is made. There is nothing in that reference which creates any ambiguity,—nothing inconsistent with whatever there is of specific description in this deed. It comports fully throughout with a design to convey all the property described in the deed to which reference is made; and where the language of a conveyance is intelligible and consistent, we cannot let in parol evidence to show the intention of the parties and to limit its extent by construction in a way which would violate any of its calls. Their intention must be ascertained from the writing itself, which, in such cases, is the best and only legal evidence of it.

A deed which, through the ignorance or heedlessness of the scrivener, misrepresents the bargain between the parties, may doubtless be reformed in equity; but until that is done, it must be allowed to have, in a suit at law, all its legitimate effect according to its terms.

But it does not follow that the plaintiff has not now a good title to the part of the grist-mill and its privilege, of which he has been so long in possession.

It remains to be determined from the testimony whether the plaintiff has not, since the making of his deed to Horace Bartlett on the 17th of May, 1843, acquired a good title, by disseisin and adverse possession, to the premises which he claims, as against his grantee and the defendants who derive their title from him.

That there is no legal rule or principle which will preclude the plaintiff from asserting a title thus acquired against his grantee, and those claiming under him, was settled in a thoroughly satisfactory opinion in the case of *Stearns* v. *Hendersass*, 9 Cush. 497. It is unnecessary here to rehearse the reasons for the doctrine. They are clearly and forcibly set forth in the case referred to. Suffice it to say, that we hold that a grantor who has conveyed a good title by war-

ranty deed may nevertheless set up against his grantee, or against those who hold his grantee's title, a title subsequently acquired by himself by disseisin of his original grantee and those claiming under him; that he does not thereby impeach or overthrow his own conveyance; that no principle of estoppel or rebutter prevents him from asserting a title thus subsequently acquired; and that such title, when maintained by the proper evidence, will stand him in as good stead as an undisputed reconveyance from his grantee. Has the plaintiff here such a title?

It is admitted by the defendants that Horace Bartlett, after his purchase from the plaintiff on the 17th of May, 1843, actually took possession of one-half of the saw-mill and the saw-mill privilege only. The plaintiff testifies (and there is nothing in the case to discredit or control his testimony) that he has kept possession of his half of the grist-mill, hitherto taking the profits accruing therefrom; that he, and those jointly interested with him, have always had the open and exclusive possession of the grist-mill and grist-mill privilege, claiming to own it, alternating in the use of it with each other monthly up to November, 1865, when the wheel broke; no one ever denying his right or asserting any counter claim, until some time in the summer of 1865, when these defendants erected the building and put in the machinery here complained of, and began to use the water without regard to the alleged rights of the grist-mill proprietors, and to deny the plaintiff's interest in the premises.

In 1855, the plaintiff alleging himself to be the owner of an undivided half of the grist-mill and grist-mill privilege, petitioned the county commissioners for an assessment of the damages caused thereto by the location of the Buckfield Branch Railroad. Harvey Bartlett, then owning half the saw-mill, by conveyance from Horace, the plaintiff's grantee, petitioned in like manner for the damages done to the saw-mill; and it appears that the hearing before the commissioners on these two petitions was had on the same day, and that an award of some $800 was made to the plaintiff as the owner of the grist-mill. In fine, he seems to have been in full and undisputed possession of the half of the grist-mill and the grist-mill privilege,

claiming it as owner, and being recognized as such, not only by his co-tenants in that property, but by the successive proprietors of the saw-mill up to the time of the commencement of the defendants' encroachments in 1865, that is, for something over twenty-two years subsequent to his conveyance to Horace Bartlett. That possession must have been perfectly well known to all the proprietors of the saw-mill who are the defendants' grantors; and it must be considered as proved, that the plaintiff has had such a possession of one-half of the grist-mill since his conveyance to Horace Bartlett, as gives him a perfect title thereto, although it was included in that conveyance. The defendant Corliss, as grantee of Rufus Woodsum, owns the other half; but that fact, as we have seen, will not protect him in a suit by his co-tenant for an injury to the common property.

The building of the excelsior mill in such a manner as to darken the grist-mill and prevent access to it for the purpose of repairing the wheels and underworks, and the use of the land in front of it as a piling place for lumber, to the exclusion of customers from the grist-mill, constitute such an injury.

With regard to the use of the water, the undisputed testimony is, that prior to 1865 the owners of the saw-mill were careful to leave water enough for the use of the grist-mill at all seasons; that the water in the upper flume did not ordinarily fall to a depth of less than four and a half feet before August or September; and that that depth of water in the upper flume would keep the grist-mill alone supplied for a month. When Ira Bartlett conveyed his half of the saw-mill and its privileges now owned by the defendants, he excepted and reserved in the conveyance all the water in the pond when it is below four and a half feet in the flume at the upper dam, except from the first of March to the first of May in each year; and simultaneously with the conveyance, Harvey Bartlett, to whom it was made, gave his bond to the plaintiff and Rufus Woodsum (who were then in possession of the grist-mill) with penalty, reciting his obligation " not to use or cause to be used any water in the mill-pond for running his saw-mill from the first day of May to the first day of March

following, in each and every year, unless the water in the upper flume is more than four and a half feet deep." Taking this in connection with the testimony previously adverted to in regard to the use of the water prior to 1865, it must be considered as establishing the right of the proprietors of the grist-mill to the exclusive use of the water if it falls below four and a half feet in depth in the upper flume, between the first of May and the first of the succeeding March.

This right, also, the defendants have infringed, and are responsible for the damage thereby occasioned.

Among the questions stated in the report we find the following:

"Have defendants a right to use water for any other purpose than for a saw-mill?"

This must depend, in the present case, upon the terms of the deeds under which they hold. A construction, which would restrict the grantees to the specific use to which the water was first applied, is not to be favored for reasons which are well assigned in *Tourtellot* v. *Phelps*, 4 Gray, 370, and *Ashley* v. *Pease*, 18 Pick. 268; and it will never be adopted unless the language of the grants unmistakably indicates that it was the intention of the parties so to restrict the use of the water. Upon an examination of the conveyance here, we see nothing to base such a restriction upon, nothing to take the case out of the general rule which is stated by Shaw, C. J., in the case last referred to, as follows:

"In general, where a mill-seat is granted, that is, land on a stream on which mills are actually situated, or where it appears by the grant that the object is to erect mills thereon, the soil is the principal subject of the grant; the right to use it for any and all mill purposes at the pleasure of the owners, and to change those uses at pleasure, follows as incident to the ownership; and words of description of the water-power, such as the right to use the stream for the saw-mills and grist-mills, &c., situated, &c., are not to be considered as restrictive of the more general right incident to the ownership."

We hold, then, that the defendants may rightfully use the water

for other purposes than for a saw-mill, provided only that they do not by the new use interfere with the rights which the proprietors of the grist-mill have gained by long-continued, uninterrupted user, and the compacts of the previous proprietors.

But they can in no event, and for no purpose, draw the water so as to reduce the depth in the upper flume below four and a half feet, between the first day of May and the first of March following, as the case finds they have done, without subjecting themselves to a liability to pay all damages to the proprietors of the grist-mill. We think Harvey Bartlett's bond must be taken to be declaratory of the mutual rights of the proprietors of the saw-mill and grist-mill respectively, as previously established among themselves and confirmed by long-continued use.

Some other questions are proposed in the report, but the evidence relating to them is too scanty and vague to enable us to give answers sufficiently definite to subserve any useful purpose.

If the referee, to whom the case is to go for the assessment of damages, has any doubt with regard to them, it will be competent for him to present them to the court by his report, accompanied by such a statement of the facts which he finds established, as may be necessary for their determination.          *Defendants defaulted.*

APPLETON, C. J.; WALTON, DANFORTH, JJ., concurred.

KENT, and TAPLEY, JJ., concurred in the result.