## Staunton.

## C. B. VAN NOSTRAND & CO., INC., AND OTHERS V. VIRGINIA ZINC AND CHEMICAL CORPORATION, LTD.

September 17, 1919.

Absent, Kelly, J.

1. MORTGAGES AND DEEDS OF TRUST—*Conveyance Subject to Deed of Trust—General Rule.*—As a general rule, a conveyance of property subject to a mortgage imposes no personal liability on the grantee, but the land conveyed is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had himself made a mortgage of the land to secure it. In other words, a purchaser of land subject to a mortgage takes nothing more than an equity of redemption therein. The legal title having already passed out of the grantor, his vendee could only redeem by paying the mortgage, and the creditors of the vendee can, of course, claim nothing more.

2. MORTGAGES AND DEEDS OF TRUST—*Recording Acts—Change in the Evidence of Debt.*—Judgment creditors of the purchaser of mortgaged property were not affected by failure to record an instrument changing the date of the notes secured by the mortgage; change in date in no way affected the debt secured.

3. MORTGAGES AND DEEDS OF TRUST—*Recording Acts—Change in the Evidence of Debt.*—A mortgage secures a debt, and not the note, or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment—nothing short of actual payment of the debt, or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness, or by a recognizance of record taken in lieu of the mortgage note.

4. MORTGAGES AND DEEDS OF TRUST—*Execution of Mortgages Before Debt is in Existence.*—It is common in the business world to execute a mortgage or deed of trust upon property in con-

templation of a loan. A deed of trust made to secure certain notes is valid, although at the time of the execution of the notes there was no debt in existence. As soon as a note was negotiated, the liability to take care of it arose, and the holder's right to the security attached.

5. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Subsequent Creditors.*—Subsequent creditors of a purchaser of property subject to a mortgage, who contracted their debts and recovered their judgments with constructive notice of the nature and extent of their debtor's title to and interest in the land in controversy, have no right to complain that the mortgage subject to which their debtor took the property was fraudulent.

6. JUDGMENT CREDITOR—*Rights Acquired by*—The judgment creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist at the time in favor of third persons; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a purchaser; he has no equity whatsoever beyond what justly belongs to his debtor; his claim is to subject to his lien such estate as the former owns, and no more.

Appeal from a decree of the Circuit Court of Washington county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*St. John & Gore* and *Henry Roberts,* for the appellants.

*Price & Pennington,* for the appellees.

WHITTLE, P., delivered the opinion of the court.

The subject matter of this litigation is forty acres of land upon which is located a manufacturing plant, situated in Washington county, in the vicinity of Bristol, Virginia, the property of John T. Williams. On October 1, 1912, John T. Williams, who was financially embarrassed, executed a

deed of trust to the Windsor Trust Company conveying the above property to secure seventy-five *one thousand dollar notes*, bearing *six per cent* interest, payable semi-annually, for the purpose of negotiation to realize money to discharge his liabilities. At that time there was a prior mortgage on the property to secure a note for $8,500 due by John T. Williams to the Dominion National Bank. Both of these deeds were duly admitted to record. On December 31, 1913, an agreement was entered into between the Empire Trust Company, trustee, successor to the Windsor Trust Company, the former trustee, and John T. Williams and wife, whereby the date of the mortgage notes was changed to October 1, 1913, payable one year after date. This agreement was not recorded until January 31, 1918.

In December, 1913, John T. Williams, to relieve his pressing indebtedness, through John T. Williams, Jr., his son, acting as his agent, induced the mother-in-law of the son, Mrs. Nellie B. Crouch, of St. Louis, Missouri, to purchase a note of the father for $33,000 secured by the indorsement and pledge of the entire issue of the seventy-five *one thousand dollar notes*, for which note she paid $30,000 in cash. Prior to this transaction Mrs. Crouch's husband had purchased the $8,500 note, secured by deed of trust, from the Dominion National Bank. Mr. Crouch having died, his wife became the owner of the note. From the cash realized on the sale of the $33,000 note, the $8,500 with interest was paid, and the balance of the proceeds of sale of the $33,000 applied in payment of other liens and debts. In January, 1914, Mrs. Crouch, on request of her son-in-law, purchased an additional note of John T. Williams for $5,500, for which she paid $5,000; and shortly thereafter purchased another note from John T. Williams for $500. Early in the year 1915 she also paid delinquent taxes and an insurance premium on the property for John T. Williams, aggregating

$1,417.42, for which he made his note. All these last-mentioned notes were likewise secured by the same issue of notes as collateral security. The notes of John T. Williams thus held by Mrs. Crouch amounted to $40,417.42, with interest from their respective dates.

On December 23, 1912, John T. Williams and wife executed a deed of trust on the property to John T. Williams, Jr., trustee, to secure a debt of $6,329.42, due to the estate of Harvey L. Williams, deceased. The lien of this deed was made subject to the deed of October 1, 1912, to secure the note issue. This deed was recorded August 12, 1912. On February 26, 1914, John T. Williams and wife executed a deed transferring and conveying the forty acres of land and improvements to the Virginia Zinc and Chemical Corporation, Limited (hereinafter called "the corporation"), which conveyance was made expressly subject to the deed of trust securing the seventy-five *one thousand dollar notes,* and the deed of trust securing the debt of $6,329.42, due to the estate of Harvey L. Williams, deceased.

The notes given Mrs. Crouch, except the note for $1,417.42, contained a provision empowering the holder to confess judgment for the maker for the amount due thereon, "and to sell or cause to be sold any or all of said collaterals, or any substitutes therefor, or additions thereto, at public sale upon such notice, at such place, and on such terms as the holder of said notes, its officers, assigns, or the holder of said liability may deem proper, or at the option of the holder of said notes, its officers, assigns, or holder of said liability, at private sale without notice to me or the public, and to apply the proceeds first to the payment of the expenses incurred by said sale, next to the discharge of my liabilities as hereinabove set out. In case of a sale of said collaterals, the holder of said note, its assigns, or the holder of any liability hereby secured, may become the purchaser

thereof without any right of redemption on my part." The notes also stipulated for the payment of a ten per cent attorney's fee.

On April 16, 1917, default having been made in the payment of the notes held by Mrs. Crouch, the collateral notes were sold, after due notice and publication, in the city of St. Louis, and she became the purchaser at the price of $10,000. She paid the expenses of sale, and the balance was entered as a credit on the demands due her of $33,000. On December 15, 1917, John T. Williams, Jr., as trustee, advertised the property conveyed in the deed of trust for the benefit of the estate of Harvey L. Williams, deceased, for sale on January 16, 1917. The judgments of appellants against the corporation were recovered in the Circuit Court of Washington county as follows: That of Bernard J. Goldstein for $205.66 with interest from June 7, 1917, subject to credits; that of C. B. Van Nostrand & Co. for $202.61, with interest from June 14, 1917; and that of Packard & Co. for $3,127.30 with interest from January 3, 1918.

In January, 1918, appellant, C. B. Van Nostrand & Co., Inc., filed a bill in the circuit court against appellees to have the sale advertised by John T. Williams, Jr., trustee, injoined, and for an account of the property in controversy, and the liens thereon with their priorities, and for a sale of the property to satisfy the same. The injunction was granted, an account ordered and returned, and exceptions thereto filed by both plaintiffs and defendants. At the June term, 1918, the case was submitted for decision and decree in vacation. In September, 1918, the decree under review was entered, settling the principles of the case. It overruled plaintiffs' exceptions to the commissioner's report, and sustained defendants' exceptions thereto, and reformed the report fixing the liens and priorities—

postponing the judgment liens of appellants to the liens asserted by appellees—and decreeing a sale of the property to discharge the liens subsisting thereon.

Appellants rest their case upon two main contentions:

1. That "The recordation, March 7, 1914, of the deed of February 26, 1914, from John T. Williams and wife conveying the property in question to Virginia Zinc and Chemical Corporation, Limited, vested the title thereto in said corporation, and said Virginia Zinc and Chemical Corporation, Limited, cannot be affected by the subsequent recordation on January 31, 1918, of the instrument of December 31, 1913;" and

2. "That the deed of trust of October 1, 1912, and the instrument of December 31, 1913, are fraudulent as to the judgment creditors of Virginia Zinc and Chemical Corporation, and should be declared null and void."

We shall consider those propositions in the order stated. Let us premise that appellants are judgment creditors of the corporation, and that neither their judgments nor the debts on which they are founded were in existence until the year 1917, four or five years after the execution of the deed of October 1, 1912, which they charge, in argument, not in the pleading and evidence on which the case was tried and decided, are fraudulent as to their judgments and should be declared null and void.

[1] It may also be observed that in the deed of February 26, 1914, from John T. Williams and wife, conveying the forty acres of land and improvements to the corporation, the grantee took the conveyance expressly subject to the deed of trust of October 1, 1912, securing the seventy-five *one thousand dollar note issue,* and the deed of trust of December 23, 1912, securing the debt of $6,329.42, to the estate of Harvey L. Williams, deceased. So that with respect to those two incumbrances the corporation practically ac-

quired only an equity of redemption in the property conveyed.

In Jones on Mortgages, sec. 736, it is said: "When one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had himself made a mortgage of the land to secure it. The conveyance of land subject to a mortgage operates to give priority to the mortgage, both as against the purchaser and those claiming liens under judgments subsequently rendered."

In *Gayle* v. *Wilson*, 30 Gratt. (71 Va.) 166, at page 173 it is said: "As a general rule, a conveyance of property subject to a mortgage imposes no personal liability on the grantee. It, however, raises a presumption that the purchaser buys the property to the extent stated, and that he takes his chances of realizing out of the property enough, over and above the mortgage, to indemnify him for his advance of purchase money. * * * In such case the land conveyed is as effectually charged with the amount of the mortgage as if the purchaser had expressly assumed its payment."

1. The first contention of appellants ignores this settled rule, that the corporation took the forty acres of land and improvements subject to these prior mortgages. In other words, when Williams sold the property subject to the mortgages named in the deed, the purchaser took nothing more than an equity of redemption therein. The legal title to the property had already passed out of the grantor to the trustees and his vendee could only redeem by paying the mortgages; and the creditors of the corporation can, of course, claim nothing more.

In the case of *Borst* v. *Nalle*, 28 Gratt. (69 Va.) 423, Burks, J., in delivering the opinion of the court, at page 433, observes: "Authorities without number might be cited

18.

to show that where statutory enactments do not interfere, the creditor can never get by his judgment more than his debtor really owns, and to this he will be confined, as he should be, by courts of equity." Citing numerous authorities for the proposition. See *Floyd* v. *Harding,* 28 Gratt. (69 Va.) 401, 407; *Charlottesville Hardware Company* v. *Perkins,* 118 Va. 34, 86 S. E. 869. We shall see presently that no statutory enactment intervenes to affect the settled rule in this case.

[2, 3] There is nothing in the pretension that the rights of appellants were affected by the failure to record the instrument dated December 31, 1913, changing the date of the notes secured by the mortgage, until January 31, 1918. It was not necessary to record that paper at all. The change of date in no way affected the *debt* secured.

In *Stimpson* v. *Bishop,* 82 Va. 190, the court, at page 198, quotes with approval from 2 Jones on Mortgages, sec. 924: "A mortgage secures a debt, and not the note, or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment—nothing short of *actual payment of the debt,* or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness, or by a recognizance of record taken in lieu of the mortgage note." *Artrip* v. *Rasnake,* 96 Va. 277, 284, 31 S. E. 4, 27 Cyc. 1406, 1412, 19 R. C. L. 450. Authorities might be multiplied to the same effect.

[4] Again, the insistence is without merit that as there was no debt at the date of the execution of the seventy-five *one thousand dollar notes,* the deed of trust, therefore, was invalid. In the business world nothing is more common than

the execution of such securities in contemplation of a loan. As soon as a note is negotiated the liability to take care of it arises, and the holder's right to the security attaches.

[5, 6] 2. This assignment contains the allegation that the deed of trust of October 1, 1912, and the instrument of December 31, 1913, are fraudulent as to the judgment creditors of the corporation. We find no such allegation in the original bill, and no evidence to sustain it, certainly not with respect to the judgments of appellants. They are subsequent creditors; and, having contracted their debts and recovered their judgments with constructive notice of the nature and extent of their debtor's title to and interest in the land in controversy, have no right to complain. The principle announced in the opinion of Staples, J., in *Floyd* v. *Harding, supra,* is controlling with respect to these judgment creditors: "It has been over and over again decided that the judgment creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist at the time in favor of third persons; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a purchaser; he has no equity whatsoever beyond what justly belongs to his debtor; his claim is to subject to his lien such estate as the former owns and no more." See also *McClanahan's Adm'r* v. *N. & W. Ry. Co.,* 122 Va. 705, 96 S. E. 453.

"A subsequent purchaser who expressly assumes payment of prior existing mortgages for property that he buys as part of the purchase price for such property, is estopped to defend against the foreclosure of such mortgages, either upon the ground of usury, or upon the ground of failure or want of consideration therefor, or upon any

other ground, and a party claiming title under one who is estopped will also be bound by the estoppel." *Key West Wharf & Coal Co.* v. *Porter*, 63 Fla. 448, 58 So. 599, Ann. Cas. 1914A. p. 173.

It is sufficient to say of the amended bill in this case that the answer denies all its allegations; and it was not filed until after the case was closed, and had been submitted to the judge for decision in vacation.

We are of opinion that there is no error in the decree appealed from, and it will, therefore, be affirmed, and the case remanded for further proceedings.

*Affirmed.*