# CASES DECIDED

## IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond.

### BLAIR v. RORER'S ADMINISTRATOR, ET ALS.

#### January 18, 1923.

1. AMENDMENTS—*Creditors' Suit—Amendment After Suit was Ended—Final Decree—Case at Bar.*—In the instant case, a lien creditors' suit to subject the lands of the debtor to the payment of the liens thereon, there had been an account of the liens and their priorities, and of the real estate liable therefor. The suit had been pending for fourteen years, and every piece of property upon which there had been even a suggestion of liability during these fourteen years had been either exonerated from liability, or had been subjected to the payment of the liens. The purchase money had been applied, the costs had been paid, the court had acted upon every question that had been presented to it for decision, and as the record stood, there was no decree that the trial court could make in favor of complainant or against the defendants.

   *Held:* That the cause had ended and a decree under these circumstances was final and the bill was not subject to further amendment.

2. AMENDMENTS—*Creditors' Suit—Right to Search Out Other Property—Case at Bar.*—In the instant case, a lien creditors' suit to subject the lands of the debtor to the payment of the liens thereon, when the Supreme Court of Appeals held on the first appeal that it was proper to search out other property than that mentioned in the original bill as liable to the payment of judgments proven in the cause, it was speaking of a *pending* cause, not of one that had ended by a final decree after such search had been made.

3. MAXIMS—*End of Litigation—Case at Bar.*—It is a maxim of the law that it is to the interest of the State that there should be an end of litigation, and the maxim is well illustrated by the facts of the present case, a creditors' suit that had been pending for fourteen years and in which there had been two former appeals.

4. JUDGMENTS AND DECREES—*Final Decree*—*"This Cause is Continued"*—
*Case at Bar.*—If a decree were in fact in all other respects a final
decree, the addition of the words "this cause is continued" would
not affect the finality, as the continuance was doubtless for the con-
clusion of some matter beyond the cause.

5. JUDGMENTS AND DECREES—*Final Decree*—*General Rule.*—A decree which
disposes of the entire subject matter of contest, leaving nothing to
be done in the cause, is a final decree, and there is a clear distinction
between further action in the cause and measures necessary for the
execution of the decree which are not in the cause but beyond the
cause.

6. CREDITORS' SUITS—*Amended Bills*—*Amended Bill After Final Decree
Treated as an Original Bill.*—Amended bills filed in a creditor's suit
after a final decree, while not good as amendments of the original
bill, are good as original bills, if not barred by the statute of limita-
tions or to be rejected for some other reason.

7. CREDITORS' SUITS—*Statute of Limitations*—*Suspension of Statute.*—A
creditor's bill to subject the lands of his debtor to judgment liens
does not suspend the running of the statute of limitations except as
to creditors who come into the suit, and, upon the same principle,
as to creditors who do come in, the act is not suspended as to
persons and property not brought into the lien creditor's suit while
it is a pending suit and before a final decree.

8. CREDITORS' SUITS—*Statute of Limitations*—*Suspension of Statute*—*New
Suit*—*Case at Bar.*—In the instant case, a creditor's suit by a judg-
ment creditor to subject the lands of the judgment debtor to the
liens of his judgments, so long as the lien creditor's suit is pending
the statute of limitations did not operate to bar the complainant
from bringing in additional parties and property provided he was not
prohibited from doing so by other causes. But as the new parties
and property brought in by the amended bills were not before the
court while the judgment creditor's suit was pending, and as the final
decree ended that suit, the case made by the amended bills must be
regarded as a new suit as to them. Furthermore, as they were not
before the court in the judgment creditor's suit, the time during
which that suit was pending is not to be excluded in the computation
of the time within which it was necessary to bring a suit to enforce
the lien of the judgments as to such new parties and property.

9. JUDGMENTS AND DECREES—*Revival*—*Section 3577 of the Code of 1904*—
*Revival of Judgment by Decree in Creditor's Suit.*—A decree in a judg-
ment creditor's suit to subject the lands of his debtor to the judg-
ment lien, which authorizes the administrator of the debtor to apply
any assets that may come into his hands to the payment of any debts
of the debtor, evidenced by judgments, notes and open accounts
against him in the order established by the commissioner's report,

does not operate to revive the judgments against the debtor's administrator, as it is in no way a compliance with section 3577 of the Code of 1904. A judgment at law cannot be thus revived by a decree in chancery.

10. EXECUTIONS—*Power to Issue not Equivalent to Issuance.*—Power or authority to issue an execution is not the issuance of an execution.

11. JUDGMENTS AND DECREES—*Decree neither an Action nor a Scire Facias.*— A decree in chancery, even when it is for money, is neither a *scire facias* nor an action.

12. CREDITORS' SUITS—*Former Adjudication or Res Adjudicata—Suit Ascertaining Liability of One Piece of Debtor's Land in Possession of Transferee as Bar to Suit to Ascertain Liability of Another Piece of Land in the Hands of the Same Transferee—Case at Bar.*—In the instant case, a lien creditor's suit to subject the lands of his debtor, the final decree in the original suit verged very closely upon *res adjudicata* as to the transferees of lands of the debtor whose liability as to certain pieces of property was ascertained in that suit, and whose liability as to transferees of other pieces of property was sought to be ascertained in the present suit. Yet as the evidence necessary to show the liability of one piece of the property was entirely different from that necessary to show the liability of the other, the principle underlying the doctrine of *res adjudicata* would seem to forbid the application of the doctrine to an adjudication as to the liability of only one of the pieces of property.

13. CREDITORS' SUITS—*Laches.*—The doctrine of laches has no application to a suit to subject lands in the hands of the judgment debtor or his alienees to the lien of the judgment.

14. DEEDS—*Acknowledgments—Attack on Deed After Long Lapse of Time— Case at Bar.*—In the instant case, a judgment creditor's suit to subject the lands of his debtor to the lien of his judgments, a deed of the judgment debtor made forty-four years before was assailed as having been defectively acknowledged. Possession was taken under the deed and held under it until the present time, and the deed was recorded more than six years before any of complainant's judgments were recovered. No credit was extended the judgment debtor on account of his ownership of the property. Under such circumstances, courts will be astute to find some means of giving effect to the *bona fide* acts of the parties, founded upon valuable consideration, if it can be done without prejudice to the rights of other persons who have superior claims.

15. ACKNOWLEDGMENTS—*Acknowledgments Upheld if Possible.*—From an early date it has been the policy of this State to look with great leniency on certificates of acknowledgment, and to uphold them if possible. They are often taken before and certified by inexperienced and sometimes illiterate persons, and hence clerical defects or omis-

sions, and obvious technical errors will be disregarded, if the law has been reasonably and fairly complied with.

16. ACKNOWLEDGMENTS—*Sufficiency.*—A substantial compliance with the material requirements of the law is all that is necessary. If it is reasonably certain that the grantor made the acknowledgment of the instrument in question that is sufficient.

17. ACKNOWLEDGMENTS—*Looking to Instrument Acknowledged in Order to Sustain Acknowledgment.*—In the effort to uphold acknowledgments the instrument acknowledged may also be looked to, especially when referred to in the certificate. Thus, where a deed is referred to in a certificate of acknowledgment in such manner as to connect the former with the latter, or make it substantially a part thereof, and reading them together, there can be found a substantial compliance with the demands of the statute, the certificate should be sustained.

18. ACKNOWLEDGMENTS—*Examination of Certificate of Recordation where Acknowledgment is Attacked.*—Where an acknowledgment is attacked as not complying with the statute, the certificate of recordation may also be examined as a contemporaneous entry of what was in fact admitted to record.

19. NAMES—*Identity—Presumption.*—Identity of name carries with it a presumption, of greater or less weight, according to circumstances, of identity of person. The oddness of the name, the size of the district and length of time within which the persons were shown to have co-existed, and other circumstances affect the weight of this presumption.

20. ACKNOWLEDGMENTS—*"Whose Name is Signed Thereto"—Identity of Party Signing with Party Acknowledging—Case at Bar.*—In the instant case the chief objection to the certificate of acknowledgment was that it did not contain the words "whose name is signed thereto," as required by Code of 1873, chapter 117, section 3, in a certificate of acknowledgment, and therefore failed to identify the party signing with the party acknowledging. There was an identity of name between the party signing and the party acknowledging.

    *Held:* That, looking to the deed itself, the certificate of acknowledgment and the certificate of recordation, the certificate of acknowledgment was sufficient.

21. ACKNOWLEDGMENTS—*Presumption that Notary did His Duty—Case at Bar.*—In the instant case, where the certificate of acknowledgment was attacked because it did not contain the words "whose name is signed thereto," as required by Code of 1873, chapter 117, section 3, there was an identity of names, and the lot conveyed was in a small town of about four hundred inhabitants. It was hardly possible that the grantor was not known to the notary who took the acknowledgment, and there is therefore a presumption that the notary did his duty and took and certified the acknowledgment of the same person

who had signed the deed. Otherwise it must be presumed that the notary was guilty of a gross fraud.

22. DEEDS—*Description—Sufficiency of Description—Parol Evidence—Lapse of Time.*—Courts are always loath to declare a deed void for uncertainty of description, and no court is at liberty to pronounce an instrument ambiguous or uncertain until it has brought to aid in its interpretation all the lights afforded by collateral facts and circumstances which are properly provable by parol. This is especially true after long years of peaceful enjoyment of property which has been improved and has greatly enhanced in value, or where the party seeking to attack the deed cannot claim to have been misled in any way to his prejudice.

23. DEEDS—*Description—Street in Small Village—Parol Evidence.*—Where a deed described the property conveyed as a lot lying upon a street laid out by the grantor in a small village in which there were few streets, it is unreasonable to suppose that the laying out of the street and the sale of lots thereon was not well known to the community. It was, therefore, entirely competent to receive parol evidence with reference to the location of the street and the laying off of lots thereon.

24. DEEDS—*Description—Interpretation—General Rules.*—Written descriptions of property are to be interpreted in the light of the surrounding facts and circumstances well known in the community; descriptions do not identify themselves, and all that is required of a deed is to furnish a means of identification; purchasers and creditors are chargeable with knowledge of all facts, which the means suggested diligently pursued, would disclose.

25. DEEDS—*Description—Change in Condition.*—If the description in a deed is sufficient when the deed is made, no subsequent change in conditions can render it insufficient.

26. RECORDING ACTS—*Marginal Correction Made After Instrument is Recorded—Case at Bar.*—In the instant case, a suit by a judgment creditor to subject the lands of his debtor to his judgments, complainant insisted that a marginal correction to a deed already recorded, made and signed by his debtor and acknowledged by him before the clerk and duly recorded before complainant's judgments were recovered, did not carry constructive notice to him of the facts contained in that memorandum, on the ground that there was no law for recording such memorandum.

*Held:* That the clerk was authorized to record such marginal correction, and the recordation carried with it the desired information as fully as if it had been formally set out in the deed, and therefore there was no merit in complainant's contention.

27. DEEDS—*Sufficiency of Description—Case at Bar.*—Where a grantor conveyed a deed described as No. 19 on R street, at the northeast corner

of R and Third streets, giving the courses and distances and the abutting streets, and the lots were for years transferred by the commissioners of the revenue of the county on the land books simply by lot numbers, and there was no evidence that the grantor owned any other lot 19 on R street, lot 19 was sufficiently identified and passed under the deed.

28. DEEDS—*Description—Maps—Possession of Grantee under the Deed—Case at Bar.*—A description in a deed of the lot conveyed referred both to a named map and lot numbers. The map referred to was well known in the community at the time the deed was made, and the lot was identified by reference to other conveyances. The grantee went into possession of the lot immediately after getting her conveyance and highly improved it without question from anybody for many years.

Held: That the description of the property conveyed was sufficient.

29. DEEDS—*Sufficiency of Description of Land Conveyed—Locality—Omission of Lot Number—Case at Bar.*—Where in a deed of a lot "in the town of Big Lick" the courses and distances given in the deed accurately and definitely described the lot conveyed, the fact that the deed did not give any lot number, nor refer to any plat, nor even mention the State in which Big Lick was located, did not impair the sufficiency of the description. As the grantor lived and owned land in the town of Big Lick, it will be presumed, in the absence of evidence to the contrary, that he had reference to the town in which he resided and owned real estate.

30. RESCISSION, CANCELLATION AND REFORMATION—*Recording Acts—Recordation of Deed in Suit for Reformation.*—A judgment creditor who was not a party to a suit for reformation of a deed is not bound by any proceedings therein, and under the terms of the statute (Code 1873, chapter 114, section 5), a deed in the suit for reformation was void as to the lien creditors of the grantor, with or without notice, unless and until duly admitted to record.

31. DEEDS—*Description—Parol Evidence to Show that Another Lot than the One Described was Intended to be Conveyed—Case at Bar.*—In the instant case the calls of the deed were consistent with each other. They exactly closed and fitted a lot on the west side of the "Van Miller lot," without doubt, uncertainty or ambiguity, and could not be made to fit a lot on the east side of the "Van Miller lot" without changing two of the four calls given in the deed.

Held: That, in such case, parol evidence was not admissible, as against judgment creditors of the grantor, to show that the grantor intended to convey and the grantee to purchase the lot on the east side of the "Van Miller lot."

32. DEEDS—*Description—Parol Evidence to Show that Other Land than that Described was Intended to be Conveyed.*—Where the description of

premises conveyed in a deed is definite, certain and unambiguous, extrinsic evidence cannot be introduced to show that it was the intention of the grantor to convey a different tract. Thus where the land is described by courses and distances parol evidence is inadmissible to prove that the true boundary is a line of marked trees not mentioned in the deed, or that a deed stating a definite course was intended to express another, or to alter or vary the legal import of monuments the location of which has been ascertained. If the calls in the grant when applied to the land correspond with each other, parol evidence will not be admitted to vary them to show that in point of fact they are not the calls of the survey as actually made.

33. RECORDING ACTS—*Constructive Notice—Misdescription in Deed.*—Where a deed which on its face conveyed a lot on the west side of a certain other lot, its recordation would not be constructive notice of the conveyance of the lot on the east side of the named lot.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for defendants. Complainant appeals.

*Reversed in part and affirmed in part.*

The opinion states the case.

*Aubrey E. Strode* and *S. A. Anderson*, for the plaintiff in error.

*Hall, Wingfield & Apperson, W. L. Welborn, A. L. Hughson, S. K. Funkhouser, Jackson & Henson,* and *Woods, Chitwood, Coxe & Rogers*, for the defendants in error.

BURKS, J., delivered the opinion of the court.

This is a lien creditors' suit to subject the lands of Ferdinand Rorer, usually designated in the record as F. Rorer, to the payment of the liens thereon. All of the judgments asserted in the cause are owned by the appellant, and are of long standing, having been rendered between the years 1884 and 1886. The judgment debtor

removed from Virginia to West Virginia in the year 1886 and died in the latter State in 1906, hopelessly insolvent, and after having been declared a bankrupt. The property now sought to be subjected is for the most part in the hands of alienees of Rorer, or those claiming under such alienees. Nearly all of it lies in the city of Roanoke and was purchased of Rorer at the time when Big Lick was a small village, or was emerging, or about to emerge, into the city of Roanoke, whose phenomenal growth in the decade from 1880 to 1890 is a matter of common knowledge, and is also manifested by the United States census for the years mentioned, of which this court will take judicial notice. That growth has since continued at a rapid rate as will also further appear from subsequent official censuses. Property that was then purchased at fractions of an acre is now sold by the front foot, and improvements have been placed upon it suitable to its location in a city, and some of it occupied by public buildings and public streets. Not only are the judgments of the ancient date mentioned, but they are no longer owned by the persons who sustained the loss by reason of the insolvency of Rorer, and are now sought to be enforced against persons who have paid the purchase money, improved the property and who have rested secure in the enjoyment of the property, without a suggestion of a defect in their titles, till the year 1920. The conveyances by Rorer were made before any of the judgments against Rorer were recovered—one of them in the year 1874, another in the year 1876, and others in 1882. The basis of the appellant's claim to subject the property to his judgments is that by reason of defective descriptions in the deeds from Rorer, or defective acknowledgments of deeds, or for some other such reason, there has been no due recordation of the conveyances from him, and that the judgments have

been kept alive by the non-residence of Rorer for a number of years, and thereafter by the institution and pendency of this suit since May, 1906.

This is the third time this case has been before this court. The two former appeals are reported under the style of *McClanahan's Adm'r* v. *Norfolk & W. R. Co.*, 118 Va. 388, 87 S. E. 731, and *McClanahan's Adm'r* v. *Norfolk & W. R. Co.*, 122 Va. 705, 96 S. E. 453. What was decided on the first appeal is thus stated in one of the opinions on the last mentioned appeal at page 733 of 122 Va., at page 454 of 96 S. E.

"(1) An amendment of a lien creditors'· bill which sets out in detail other lands bound by the plaintiff's judgments and brings before the court all those who claim to be interested in those lands adversely to the lien creditors, is not a departure from the original bill, and does not make a new case, although it contains some averments not contained in the original bill; and as to lien creditors who subsequently prove their debts in the case, the filing of the bill stops the running of the statute of limitations.

"(2) The removal of the judgment debtor from the State is of itself an obstruction to a suit to enforce the judgment, and the statute of limitations does not run against the judgment while the debtor remains out of the State.

"(3) A judgment which is a lien on land in the hands of an alienee of a judgment debtor, and which is not barred as against the debtor because of his removal from the State, may be enforced against the lands in the hands of such alienee, although the latter has in no way obstructed the prosecution of the plaintiff's rights. Section 2933 of the Code does not apply to such case.

"(4) The doctrine of laches has no application to a suit to subject lands in the hands of the judgment debt-

or or his alienees to the lien of the judgment. The judgment is an express, absolute, statutory lien on the debtor's real estate, and the right to resort to a court of equity to enforce it is a legal right, without terms or conditions, and continues during the life of the judgment.

"The correctness of the above propositions cannot now be called in question, even if we were disposed to do so, as they have become the law of the case. *Steinman* v. *Clinchfield Coal Corporation*, 121 Va. 611, 93 S. E. 684."

On the last appeal, the court settled the rights of the litigants as to the property then before court. There was then in controversy, amongst other things, the liability of one acre of ground claimed by the Norfolk and Western Railway Company, on which its office building was erected, to the judgments of the appellant, and this court held that the said railway company had good title to said one acre against all the world, and that Rorer was completely divested of all title thereto by the adverse possession of said railway company. That question is no longer open to debate in this cause.

When the case went back, the trial court proceeded to subject by sale all of the real estate mentioned in the pleadings which this court had held liable for the appellant's judgments, and by September, 1919, had exhausted all of the property liable to said judgments which had been brought to its attention. The decree of September 18, 1919, left nothing to be done in the cause, that could affect the rights of the complainant or any of the defendants then before the court respecting any property that had been brought to the attention of the court as liable to the lien of complainant's judgments. It is claimed by the appellant that Rorer had some sort of interest in the fee in the streets adjoining the office building lot of the Norfolk and Western Railway Com-

pany and in that lot itself, but the streets aforesaid were a part of said one acre, and the adverse possession of the streets, subject to the easement of the city for street purposes, was as fully established as of the lot itself, and the decision on the second appeal was that Rorer had been divested of every interest in the whole acre by the adverse possession aforesaid. The language of the majority opinion is that the adverse possession of the railway company "has not only extinguished the Rorer title but created and conferred on the defendant company a brand-new and indefeasible one, which cannot be sold for Rorer's debts." We need not enter, therefore, upon any discussion of a right in Rorer which, if sold, might give the purchaser the right to bring an action of ejectment.

Afterwards, in January, 1920, the appellant filed an amended bill, by which he charged that there were other lands liable to his judgments, and designated seven different parcels and the names of the persons in possession, which he charged were so liable for reasons stated. After making these specific charges he then makes the following omnibus charge:

"Your orator avers and charges that there are other lands in the city and county of Roanoke liable to the lien of your orator's judgments, which he has not had at this time an opportunity to ascertain, which should be examined by a commissioner of this court, and the parties in possession be brought into this suit upon the notice of the commissioner taking the account, or by an amended bill, as in your honor's judgment may be proper, the object and scope of this bill being to subject to the lien of the judgments owned by your orator asserted in this suit all of the lands of F. Rorer found therefor within the State of Virginia."

In August, 1920, the appellant filed an additional

amended bill for the purpose of correcting errors committed in the amended bill of January, 1920. This bill (of January, 1920) was dismissed on the merits as to the defendants therein who are appellees here by the decree of October 1, 1920, which is one of the decrees appealed from.

In December, 1920, the appellant filed another amended bill in which he states that he has ascertained what he did not know when he filed his last amended bill, that there are other lands liable to his judgments, and proceeds to designate some six or eight different parcels of land and the names of the parties in possession, and his reason for charging that they are liable to his judgments. He prays that the persons designated be made defendants, and that the lands mentioned be subjected to the payment of his judgments. In February, 1921, he filed in court another amended bill which is substantially the same as the bill of December, 1920. There was no appearance by the defendants to any of these bills, but in April, 1921, the defendants gave notice to the appellant that they would on May 3, 1921, move the court, for reasons stated in writing and filed with the notice, to set aside its decree entered at February term, 1921, allowing him to file an amended bill, and to enter a decree refusing to allow such amendment. The motion was in writing and stated numerous grounds on which the amendment should be refused.

Among the grounds so stated were that the case was an ended cause and the bill was not subject to amendment, and, even if it were not ended, the subject of amendment was within the discretion of the trial court, and, in view of the length of time the suit had been pending, the number of amended and supplemental bills the appellant had been allowed to file, and the litigation thereunder, the stage the cause had reached, and

the gross injustice that would be done the defendants if the bill was allowed as an amendment, the amendment should not be permitted. This motion was answered in writing by the appellant, in which he denied that the case was an ended cause or, if it was not, that the doctrine of laches applied to a suit of this nature, relying upon the holdings in the former appeals in this case. Sundry demurrers and answers were filed by the different defendants and the case was heard on said demurrers, the said written motion, and the answer thereto and the replication of the defendants to said answer, and the court, after hearing the argument of counsel, took the cause for a vacation case, and on July 1, 1921, decreed as follows:

### A

"That (1) the certificate of acknowledgment to the deed from F. Rorer to George Garst, dated April 7, 1876, is sufficient; (2) the certificate of acknowledgment to the deed from F. Rorer to A. McD. Smith, dated September 21, 1876, substantially complies with the laws; (3) said deeds were, therefore, properly admitted to record; (4) it therefore appears from the face of the amended and supplemental bill of W. J. Blair and the record and exhibits made a part thereof, that the judgments sought to be enforced by said Blair therein are barred by the statute of limitations and are not subsisting liens on any of the property sought to be subjected thereto in this cause.

### B

"(5) It was error to allow the amended and supplemental bill filed at February term, 1921, in this court, to be filed as an amended and supplemental bill in the

original cause of *McClanahan's Adm'r* v. *F. Rorer's Adm'r, et als.*

It is, therefore, adjudged, ordered and decreed that (1) the demurrers of each of the defendants to the amended and supplemental bills are hereby sustained and said bills are dismissed; (2) the decree of February, 1921, is hereby set aside and annulled, and (3) that each of the said defendants recover from said W. J. Blair their reasonable costs by them in this behalf expended."

From this decree and the decree entered at the October term, 1920, the present appeal was taken.

[1] The first question for consideration is: Had the cause ended? Had there been a final decree therein? This question must be answered in the affirmative, for the following reasons: The suit was a lien creditors' suit to subject the lands of F. Rorer to the payment of the liens thereon. There had been an account of the liens and their priorities, and of the real estate liable therefor. The suit had been pending since 1906 and been to this court twice on appeal. Every piece of property upon which there had been even a suggestion of liability during these fourteen years had been either exonerated from liability, or had been subjected to the payment of said liens. The purchase money had been applied, the costs had been paid, the court had acted upon every question that had been presented to it for decision, and no judicial question remained open and undecided. As the record then stood, there was no decree that the trial court could properly make in favor of the appellant or against the defendants. Some of the purchase money on one piece of property had not been reported as paid, but its collection and appropriation had been directed, and the whole case otherwise disposed of. There was nothing further that the court could then do in the cause, as it stood, for the relief of the appellant.

The appellant, however, insists that the cause was not ended because some sort of interest of Rorer in the office building lot of the Norfolk and Western Railway Company and the streets adjoining had not been disposed of, but we have already seen that it was held by this court on the second appeal (122 Va. at page 732, 96 S. E. 453) that Rorer had no interest in this property which could be sold for his debts. In other words, the title of the railway company was superior to that of Rorer, and not under him.

[2, 3] Appellant further insists that the cause was not ended because Rorer's personal representative and heirs were still before the court, appellant's judgments still unpaid, and the prayers of the original and of the various amended and supplemental bills was for the subjection of all of his real estate to the payment of said judgments. He insists that the holding on the first appeal gave him the right to search out by amended bills additional lands liable to his judgments. His search, however, had ended, and the property, so far as liable, had been subjected. If his present claim be sound, the suit can never end until he chooses to dismiss it, and may remain on the docket for a century, or longer. When this court held, on the first appeal, that it was proper to search out other property than that mentioned in the original bill as liable to the payment of judgments proven in the cause, it was speaking of a *pending* cause, not of one that has ended by a final decree after such search has been made. It never held that the mode of procedure could go on indefinitely in the future, and of course not in an ended cause. It is a maxim of the law that it is to the interest of the State that there should be an end of litigation, and the maxim is well illustrated by the facts of the present case.

[4] It is finally insisted by the appellant that the

cause was not ended by the decree of September 18, 1919, because the decree concludes "this cause is continued." The continuance was doubtless for the conclusion of some matter "beyond the cause," but not in the cause. If the decree were in fact in all other respects a final decree, the addition of the words "this cause is continued" would not affect its finality.

We have so often stated what constitutes a final decree that it seems unnecessary to do more than quote what is said on the subject in *Johnson* v. *Merritt*, 125 Va. 162, 180-81, 99 S. E. 785, 790, 791, where a number of our prior decisions are cited.

[5] "Every question sought to be litigated by the bill had been decided and the whole object of the litigation had been accomplished, even down to the direction of the payment of costs to the officers of the court. Nothing remained to be done, except for the commissioner of the court to pay out as directed by the decree, the funds shown to be in his hands. * * * We have repeatedly held that a decree which disposes of the entire subject matter of contest, leaving nothing to be done in the cause, is a final decree. * * The decisions draw a clear distinction between further *action in the cause* and measures necessary for the execution of the decree which were not *in the cause but beyond the cause.*"

[6] Applying the rule there laid down, we are of opinion that this cause was an ended cause when the amended bill of January, 1920, was filed; that the original bill was no longer subject to amendment, and that section 6095 of the Code has no application to the case. The amended bills of 1920 and 1921, however, while not good as amendments of the original bill, are good as original bills, if not barred by the statute of limitations or to be rejected for some other reason.

[7] The original bill in this case was filed in 1906, and

it clearly appears from the opinions on the former appeals that all of the judgments sought to be enforced would now be barred by the act of limitations but for the pendency of that creditor's bill. Such a bill, however, does not suspend the running of the statute except as to creditors who come into the suit, and, upon the same principle, as to creditors who do come in, the act is not suspended as to persons and property not brought into the lien creditor's suit while it is a pending suit and before a final decree. In the official report of *Callaway's Adm'r* v. *Saunders*, 99 Va. 350, 38 S. E. 182, some of the facts either do not appear, or appear only inferentially, but an examination of the printed record and briefs on file in this court shows that a creditor's bill was filed in the Circuit Court of Franklin county, in 1872, against C. I. Saunders, in which there was taken an account of the liens and their priorities on the lands of C.I. Saunders, and that this suit continued on the docket until 1892; that while this suit was still pending on the docket, another lien creditor's bill (*Prunty* v. *Saunders*) was filed; that on July 4, 1898, Callaway's administrator filed a petition in the last mentioned suit seeking to set up a judgment against C. I. Saunders. There was never a time from obtaining the judgment of Callaway's administrator till the filing of his petition aforesaid that there was not a lien creditor's bill pending against C. I. Saunders. The two suits aforesaid over-lapped each other. Callaway's administrator never came into the first suit while it was pending, but claimed that the pendency of that suit suspended the running of the statute of limitations as to his debt. But if the time during the pendency of that suit be excluded, the judgment of Callaway's administrator was barred by the act of limitations when the second suit was instituted. Upon that state of facts, this court said:

"The doctrine that the statute of limitations is suspended when a decree for an account of the outstanding indebtedness is entered in a creditor's suit is not founded upon legislative enactment, but is a mere rule of courts of equity for the more convenient administration of the debtors' assets and to avoid a multiplicity of suits. *Stephenson* v. *Taverners*, 9 Gratt. (50 Va.) 398, 405-6; *Piedmont, etc., Ins. Co.* v. *Maury*, 75 Va. 508, 510-12; 1 Daniels Chy. Pl. & Pr. (5th ed.) 642, side page; 1 Barton's Chy. Pr. (2nd ed.) 115.

"It is sometimes broadly stated that an order for an account of liens suspends the running of the statute against all lien creditors.    But no authority is cited, and in our investigation we have found no case, which holds that the order for an account will prevent the running of the statute against the demand of a creditor who did not assert his demand in the suit.    On the contrary, the authorities show that the rule only applies to such creditors as come in under the decree, or otherwise become parties to the suit, and that as to all others the statute continues to run.    1 Daniel Chy. Pl. & Pr. (5th ed.) side page 643; *Sterndale* v. *Hankinson*, 1 Simons 293. The appellant not having come in under the decree for an account in that case, nor become a party to the suit, cannot rely upon it to prevent the statute from running against his demand asserted in this case."

The same doctrine was announced in *Prince's Adm'r* v. *McLemore*, 108 Va. 269, 276, 61 S. E. 802, 804, where it is said: "That while the effect of the creditor's bill, was to stay during its pendency the running of the statute of limitations, it only had that effect as to those debts which were brought into the suit and kept alive while it was still pending; and that the suit once ended has no longer any efficacy in repelling the running of the statute of limitations.    And this, we think, is the result of our decisions upon the subject."

[8] So long as the lien creditors' suit was pending the statute of limitations did not operate to bar the appellant from bringing in additional parties and property provided he was not prohibited from doing so by other causes.   But as the new parties and property brought in by the amended bills were not before the court while the lien creditors' suit was pending, and as the final decree ended that suit, the case made by the amended bills must be regarded as a new suit as to them.   Furthermore, as they were not before the court in the lien creditors' suit, the time during which that suit was pending is not to be excluded in the computation of the time within which it was necessary to bring a suit to enforce the lien of the judgments.   Excluding this time the suit was not brought against these parties within the time required by law.   They stood as if no creditors' bill had ever been filed.   The judgments were never revived against the personal representative of F. Rorer as required by section 3577 of the Code, 1904, and the new suit not having been brought within the time allowed for such revival the appellant's judgments are barred as to these parties and the property owned by them.

[9-11] It was argued by counsel for the appellant that the decree made in the cause at October term, 1914, of the trial court operated to revive the judgments against Rorer's administrator.   The decree referred to, so far as need be quoted, is as follows:

"(5) That the several debts against F. Rorer, deceased, evidenced by the judgments, notes and open accounts against him set out in said report   *   *   *   are valid and subsisting charges against the estate of F. Rorer, deceased, that the same are not barred by the statute of limitations as against F. Rorer, his estate, his administrator or his heirs at law, and the said W. D. Martin, administrator of F. Rorer, deceased, is here

authorized to pay out of such assets as may come into his hands to be administered to the parties respectively entitled thereto as set out in said report, the amounts, principal, interest and costs severally due thereon as stated in said report.

"(6) That said judgments, notes and open accounts and each of them in favor of the parties therein named respectively for the amounts and in the order set out in said report are hereby established as liens upon the estate of F. Rorer, deceased, particularly upon the following real estate, of which the said F. Rorer died seized, possessed or entitled to."

It will be observed that the decree referred to applies as well to notes and open accounts as to judgments, and is not even a decree for money, but simply authorizes the administrator of Rorer to apply any assets that may come into his hands to the payment of those liabilities in the order established by the commissioner's report. This is in no way a compliance with section 3577 of the Code of 1904, which provides that where execution issue within the year, other executions may be issued, or a *scire facias* or action may be brought within five years from the qualification of a personal representative. Power or authority to issue an execution is not the issuance of an execution, and a decree in chancery, even when it is for money, is neither a *scire facias* nor an action. A judgment at law cannot be thus revived by a decree in chancery. Plainly, the judgments against Rorer were not revived by the decree aforesaid.

The application of the bar of the statute of limitations to all of the new parties brought in for the first time by the bills of 1920 and 1921, eliminates all of the parties brought in by said bills except the Norfolk and Western Railway Company, the city of Roanoke, Frank Fallon and the school board of the city of Roanoke, who were

parties to the suit before the final decree was entered therein. As to these parties the appellant's judgments were kept alive by the pendency of the original suit, and were not barred by the statute of limitations.

[12, 13] The final decree in the original suit verges very closely upon *res judicata* as to these defendants. The cause of action (the appellant's judgments) is the same, and the parties are the same, and it was not merely the right, but the duty, of the appellant to present his whole case in the one suit to enforce the lien of his judgments. He had no more knowledge of facts in 1920, as to the property now sought to be held liable, than he ought to have had many years ago, by the exercise of ordinary diligence, and which should have been utilized before final decree in the original suit. He had no right to split up his demands. For example, he had no right to maintain several suits at the same time, or successive suits against the Norfolk and Western Railway Company to subject its office building property and the Smith property. Yet the evidence necessary to show the liability of one piece of the property was entirely different from that necessary to show the liability of the other, and the principle underlying the doctrine of *res judicata* would seem to forbid the application of the doctrine to an adjudication as to the liability of only one of the pieces of property. *Brunner* v. *Cook*, 134 Va. 266, 114 S. E. 650 (decided November 16, 1922); *Cayer* v. *Parker*, 24 Neb. 643, 39 N. W. 845, 8 Am. St. Rep. 227; *Rossman* v. *Tilleny*, 80 Minn. 163, 83 N. W. 42, 81 Am. St. Rep. 247; *Hodge* v. *Shaw*, 85 Iowa, 137, 52 N. W. 8, 39 Am. St. Rep. 290. Nor, under previous holdings in this and other cases, can the doctrine of laches be applied. We shall, therefore, waive the application of the doctrine of *res judicata* as applied to the facts of this case, and proceed with the consideration of the liability

of the several pieces of property sought to be subjected by the appellant.

A lot known in the record as the Norfolk and Western Railway Company lot, was acquired by that company under a conveyance made by F. Rorer to A. McD. Smith, in 1876, and was impleaded for the first time by the bill filed in December, 1920. It is conceded that the deed to Smith is free from criticism, but it is claimed that the certificate of acknowledgment is not sufficient and hence the recordation of the deed is void as against appellant's judgments. The certificate of acknowledgment is as follows:

"Roanoke county, to-wit:

"This is to certify that F. Rorer, of the county of Roanoke and State of Virginia, personally appeared before me, a notary public for aforesaid county, and acknowledged said writing to be his act and deed.

"Given under my hand this 21st day of September, 1876.

"J. W. Gish, N. P."

The clerk's certificate of recordation is as follows:

"In the clerk's office of the county court of Roanoke county, the 11th day of February, 1878.

"This deed from Ferdinand Rorer to A. McD. Smith, bearing date on the 14th day of June, 1876, was produced, together with certificate of acknowledgment thereto annexed, and admitted to record.

"Teste:    Wm. McCauley, Clerk."

The statute in force when the deed was acknowledged and admitted to record (Code 1873, ch. 117, sec. 3) required the clerk to admit to record any deed as to *any person whose name is signed thereto*, upon a certificate of acknowledgment before a notary public or certain

other designated officers written on or annexed to the same, to the following effect, to-wit: "I_____
\* \* \* do certify that R. F. whose name is signed to the writing above (or hereto annexed) bearing date on the_____day of_____, has acknowledged the same before me in my county aforesaid."

The appellant claims that the certificate is insufficient (1) "because it does not contain a certificate by the officer that the F. Rorer who acknowledged was the F. Rorer that signed the deed, and (2) because the certificate does not contain a certificate by the officer that the writing acknowledged was the writing signed." A number of cases from this and other States have been cited by the appellant in support of his claim, and by the appellee on the other side, and the question has been ably argued pro and con. It is not feasible to review all of the cases cited in an opinion of ordinary length, nor do we deem it necessary to go outside of our own jurisdiction for authority on the subject. Our own cases have established the controlling principle, and so far as those of other States are in conflict therewith they cannot be followed, as they would affect property rights which have attached under our holdings.

[14] It is to be borne in mind that the deed to Smith was made more than 44 years before the acknowledgment was assailed, that possession was taken and has been held under it ever since until the present time, and that the deed was recorded more than six years before any of appellant's judgments were recovered. No credit was extended the judgment debtor on account of his ownership of the property. Under such circumstances, courts will be astute to find some means of giving effect to the *bona fide* acts of the parties, founded upon valuable consideration, if it can be done without prejudice to the rights of other persons who have su-

perior claims. *Kelly* v. *Calhoun*, 95 U. S. 710, 24 L. Ed. 544.

[15-17] From an early date it has been the policy of this State to look with great leniency on certificates of acknowledgment, and to uphold them if possible. They are often taken before and certified by inexperienced and sometimes illiterate persons, and hence clerical defects or omissions, and obvious technical errors, will be disregarded, if the law has been reasonably and fairly complied with. A substantial compliance with the material requirements of the law is all that is necessary. If it is reasonably certain that the grantor made the acknowledgment of the instrument in question that is sufficient. *Geil* v. *Geil*, 101 Va. 775, 45 S. E. 325; *Sullivan* v. *Gum*, 106 Va. 245, 55 S. E. 535, 10 Ann. Cas. 128; *Hurst & Co.* v. *Leckie*, 97 Va. 550, 34 S. E. 464, 75 Am. St. Rep. 798; *Hockman* v. *McClanahan*, 87 Va. 33, 12 S. E. 230; *Virginia Coal & I. Co.* v. *Robertson*, 88 Va. 116, 13 S. E. 350; *Worley* v. *Adams*, 111 Va. 796, 69 S. E. 929; *Saffell* v. *Orr*, 109 Va. 768, 64 S. E. 1057; *Langhorne* v. *Hobson*, 4 Leigh (31 Va.), 224; *Tod* v. *Baylor*, 4 Leigh (31 Va.), 498; 1 Cyc. 586 and cases cited. In the effort to uphold acknowledgments the instrument acknowledged may also be looked to, especially when referred to in the certificate. In *Summer* v. *Mitchell*, 29 Fla. 179, 10 South. 562, 14 L. R. A. 815, 30 Am. St. Rep. 106, quoted with approval by this court in *Horley* v. *Adams*, 111 Va. 796, 802, 69 S. E. 929, it was said: "Where a deed is referred to in a certificate in such manner as to connect the former with the latter, or make it substantially a part thereof, as is the case here, and, reading them together, there can be found a substantial compliance with the demands of the statute, the certificate should be sustained."

[18] The certificate of recordation may also be ex-

amined as a contemporaneous entry of what was in fact admitted to record. *Oney* v. *Clendenin,* 28 W. Va. 34; *Fouse* v. *Gilfillan,* 45 W. Va. 213, 32 S. E. 178; 1 Cyc. 583-584, and cases cited.

[19-20] One of the chief objections, if not the only substantial one, to the certificate of acknowledgment is that it does not contain the words "whose name is signed thereto," and thereby fails to identify the party signing with the party acknowledging. In the first place there is the identity of name, which carries with it a presumption, of greater or less weight according to circumstances, of identity of person. In 1 Green. Ev., (16th ed. by Wigmore), sec. 43a, it is said:

"In regard to the supposed presumption of identity of person from identity of name three things are to be said: (1) 'A concordance in name alone is always some evidence of identity, and it is not correct to say with the books that, besides proof of the facts in relation to the persons named, their identity must be shown, implying that the agreement of name goes for nothing; whereas it is always a considerable step towards that conclusion.' (2) In the greater number of cases the ruling is merely that identity of name, with or without evidence, is or is not sufficient evidence to go to the jury or sufficient to support a verdict on the principle of section 14 Wigmore, *ante.* The oddness of the name, the size of the district and length of time within which the persons are shown to have co-existed, and other circumstances affect this result differently in different cases. (3) Often a genuine presumption is enforced by the courts, in the sense that the duty of producing evidence to the contrary is thrown upon the opponent. But these rulings cannot be said to attach a presumption to a definite and constant set of facts; they apply the presumption upon the circumstances of the particular case.

*     *     *     *     *     *     *     *     *     *

"Where an identity of names is found in deeds or the like in tracing the title from ancestors and grantors the courts are more frequently found enforcing a genuine presumption."

Among the authorities cited by Wigmore for the last proposition is *Pollard's Heirs* v. *Lively*, 4 Gratt. (45 Va.) 73, where the identity of the name of ancestor with that of a patentee of land was held sufficient evidence that the grantee was the patentee, in the absence of evidence to the contrary. In the instant case, the record abundantly shows that F. Rorer was a resident of the small village of Roanoke, and was engaged in selling off lands in Roanoke county to various individuals, and this strengthens the presumption that he was the same F. Rorer who made the deed in question. The lot conveyed was in the village of Big Lick, an incorporated town of about 400 inhabitants, and it is hardly possible that F. Rorer, the grantor, was not known to the notary who took the acknowledgment, and there is a presumption that the notary did his duty and took and certified the acknowledgment of the same F. Rorer who had signed the deed. Otherwise we must presume that the notary was guilty of a gross fraud. In *Guarantee Co.* v. *First National Bank*, 95 Va. 480, 28 S. E. 909, it was held that as a sheriff had no authority to execute an attachment outside of his bailiwick, upon a return of an attachment executed by him, it would be presumed that he had executed it within his bailiwick. If such a presumption was indulged in an attachment case where everything at that time was required to be within the letter of the law, it must of necessity, in a case of this character, be presumed that the officer did his duty and that when he certified that F. Rorer of the county of Roanoke and State of Virginia acknowl-

edged the said writing to be his act and deed, he had reference to the same F. Rorer who has signed the deed.

If we look to the deed itself, the certificate of acknowledgment and the certificate of recordation, we find that the instrument recorded appears on its face to be a deed, made by F. Rorer, of the county of Roanoke and State of Virginia, and is signed and sealed, and is dated 14th day of June, 1876. The certificate of acknowledgment shows that F. Rorer, of the county of Roanoke and State of Virginia, acknowledged *said* writing to be his act and deed. The word "said," of course, was inappropriate as no writing had been previously mentioned, and could only have referred to the writing then before the notary and of which he was taking the acknowledgment. We have before us only a certified copy of the deed, and the certificates of acknowledgment and of recordation, and not the originals, and hence cannot state whether or not all of these papers were on one or more pieces of paper, nor their relative positions, but the certificate of acknowledgment must have been so connected with or attached to the deed as to show that the deed was the paper referred to in the acknowledgment, else the clerk could not have so certified. If we look further to the certificate of recordation, we find that the acknowledgment referred to a deed from Rorer to Smith, dated June 14, 1876, which is the date of the deed acknowledged. We are of opinion that, upon the facts of this case, the certificate of acknowledgment is sufficient and that the lot aforesaid is not liable to the judgments of the appellant.

We have not reviewed the authorities cited by the appellant because we are of opinion that the principle involved is settled by our own cases. A number of the cases cited for the appellant either come from jurisdictions whose statutory requirements as to certificates of

acknowledgment differ from ours, or else the opinions do not state fully the statutory requirements. *Goad* v. *Walker*, 73 W. Va. 431, 80 S. E. 873, it is true, takes a different view from what we have stated upon substantially the same statutes as ours was in 1876. While we entertain the highest respect for the court of West Virginia, we are unable to follow the holding in that case.

The ground upon which the remaining property is sought to be subjected by the appellant is the inadequacy of the description in the several deeds of conveyance. Counsel have argued with marked ability, citing many authorities, the subject of inadequacy of description in deeds of conveyance, including descriptions by more lot numbers on unofficial or unidentified maps, conveyances by metes and bounds where the beginning point is not definitely fixed, patent and latent ambiguities, and the use of parol evidence in connection therewith. But, in the view which we take of the evidence, it will not be necessary to discuss these subjects. The facts disclosed by the record are such that the application of familiar principles will lead to satisfactory conclusions.

[22, 23] Courts are always loath to declare a deed void for uncertainty of description, and, as was said in *Sulphur Mines Co.* v. *Thompson's Heirs*, 93 Va. 293, 308, 25 S. E. 232, 234: "No court is at liberty to pronounce an instrument ambiguous or uncertain until it has brought to aid in its interpretation all the lights afforded by collateral facts and circumstances which are properly provable by parol." This is especially true after long years of peaceful enjoyment of property which has been improved and has greatly enhanced in value. The property which is sought to be subjected by the appellant to his judgments was conveyed to

those under whom the appellees claim nearly a half a century ago, and years before the appellant's judgments were recovered. The property has greatly enhanced in value by the emergence of a small town of four hundred inhabitants into a city of upwards of fifty thousand, and has been greatly improved by the erection of buildings thereon. Some portions of the property sought to be subjected are now occupied by the municipal building of the city, by the city school board, and by a hospital, and other portions by homes. One of the deeds made by the judgment debtor was as far back as 1874, another in 1876, and still others in 1882, whereas the judgments sought to be enforced against it were not recovered until 1884 and 1885. These judgments have all been acquired by the appellant. He has exhausted all of the real estate of the judgment debtor, and that of all of his alienees who had been so unfortunate as not to record their deeds before his judgments were docketed. Since then he has set about the examination of the deeds made by the judgment debtor to ascertain if there were any defects that he could lay hold of in order to subject the property to the payment of his judgments. He does not, and cannot, claim that he has been misled in any way to his prejudice, as his judgments were recovered, and probably his debts contracted, long after the conveyances were made which are now sought to be set aside. His sole claim is that the deeds of conveyance made by Rorer did not so accurately describe the property conveyed as to give notice to judgment creditors of Rorer of the property conveyed. Rorer resided in the small town of Big Lick, Virginia, which had only about four hundred inhabitants, and owned property in the town. He determined to sell off a portion of the property and to this end caused it to be surveyed, laid off into lots, a plat made,

and the property was offered for sale both publicly and privately. There were but few streets in this village and they were, of course, well known. In laying off his property for sale Rorer ran a street through the property, which he called Roanoke street, upon each side of which he laid off lots. Lot 28 hereinafter mentioned was purchased by Andrews and was one of the first lots on Roanoke street conveyed by Rorer. It is a matter of common knowledge that in a small community of this kind everybody knows everybody's business, and it is unreasonable to suppose that the laying out of this street and the sale of these lots was not well known in the community. It is unreasonable to believe that the location of Roanoke street, which was only about 1,000 feet long, was not well known in the community. The existence of this street and the laying off of the lots on each side of it would be as well known in a community of that size as the corners of old surveys were known in remote and uninhabited sections of the country, and the remarks of Judge Tucker in *Harriman* v. *Brown*, 8 Leigh (35 Va.) at page 710, are as appropriate to the conditions at Big Lick as to the old surveys referred to by him. In referring to ancient boundaries and corners he says: "Everyone who knows anything of the history of that county must know the deep interest and familiar knowledge which the early settlers possessed in relation to the corners and boundaries and localities not only of their own particular tract but of almost every tract within range of their settlement. Everyone knows that such subjects were not only familiar topics of conversation, but that they were the all-absorbing topics. I will venture to conjecture that for one discussion in private conversation as to the boundaries of an English manor there have been a hundred animated and interesting disputes about the

situation of a corner tree in our western counties." It was entirely competent, therefore, to receive parol evidence with reference to the location of Roanoke street, and the laying off of lots thereon. Indeed, in speaking of the location of Roanoke street in the petition for appeal, it is said its location "is not drawn in question, there being no dispute as to the location of Roanoke street."

[24, 25] Furthermore, it must be borne in mind that written descriptions of property are to be interpreted in the light of the surrounding facts and circumstances well known in the community; that descriptions do not identify themselves, and that all that is required of a deed is to furnish a means of identification; that purchasers and creditors are chargeable with knowledge of all facts, which the means suggested, diligently pursued, would disclose. *Florence* v. *Morien*, 98 Va. 26, 34 S. E. 890; *Williamson* v. *Payne*, 103 Va. 551, 49 S. E. 660; *Wetzler* v. *Nichols*, 53 Wash. 285, 101 Pac. 867, 132 Am. St. Rep. 1076; *Warren* v. *Syme*, 7 W. Va. 474; 23 R. C. L. 220-21, and cases cited. Furthermore, if the description is sufficient when the deed is made no subsequent change in conditions can render it insufficient. Devlin on Deeds (3rd ed.), p. 1928.

Even though no map was recorded by Rorer, the fact that he owned property on Roanoke street, the location of that street, and the further fact that he sold off lots fronting on that street was as well known in the community as ancient boundaries of unoccupied lands. An examination of the record of deeds made by Rorer of lots on Roanoke street would have shown with reasonable certainty the location of every lot in controversy. To show how complete was the information which would have been obtained by such an examination, counsel for some of the appellees have filed with their

brief a map of the Rorer property on Roanoke street
which is made up from deeds of record and the testi-
mony in this case, and it shows how fully and com-
pletely the lots referred to in Rorer's various deeds
could be identified. That map is filed herewith, merely

as an aid in the construction of the deeds to be herein-
after referred to.

Lot No. 19, now owned by the school board of the
city of Roanoke, was conveyed to W. K. Andrews by
F. Rorer by deed bearing date December 29, 1874. The
deed also conveyed lot No. 28. The description given in

the deed so far as necessary to be given is as follows: "Two certain lots or parcels of land lying in the town of Big Lick, designated as lots 19 and 28, situated on opposite sides of Roanoke street; lot No. 19 contains ¼ acre, being bounded as follows:  Commencing at the northwest corner of Roanoke street, thence N. 81¼° E. 147 ft. to an alley; thence south 8¾° E. 73 feet to the corner of lot No. 20; thence S. 81¼° W. 147 feet to Roanoke street; thence with the same N. 8¼° W. 73 feet to the beginning."  This deed was recorded April 16, 1875, and there appears on the margin of the page of the deed book in the clerk's office where the deed is recorded the following:  "In the sixteenth line of this deed is a clerical error which was not noticed until said deed was recorded.  Instead of 'to corner of lot 20' it should read 'to corner of third street.'  April 17, 1877.

"F. Rorer.

"Acknowledged by F. Rorer to be his act.

"Given under my hand this 17th day of April, 1877.

"E. S. McCauley, Clerk."

If this addendum of 1877 may be read into the deed then the description of the lot is in every respect complete.  The deed thus mentioned calls for lot 19, in the town of Big Lick, fronting seventy-three feet on Roanoke street, running back between parallel lines 147 feet to an alley, and locates the lot at the intersection of Roanoke and Third streets.

As the earliest judgment acquired by the appellant was not obtained until 1884, he could make no requirement of information to be furnished by the record until that date, and he is chargeable with the information pointed out by deeds of the grantees of the land sought to be subjected and furnished by the records at that date.  Looking then to the deed to Andrews of lot 19 as amended, he would have found that it conveyed a

lot, not simply by number, but also on the northeast corner of Roanoke and Third streets. Regardless of any map or lot number, the lot conveyed was situated at the northeast corner of these two streets, fronting seventy-three feet on Roanoke street. If these two streets could be properly identified, the lot was fully and accurately described. We have said the lot is located at the northeast corner of the two streets mentioned. This is made to appear from the courses and distances given in the deed. There is "no dispute as to the location of Roanoke street," neither is there any doubt about the fact that Roanoke street was laid out by Rorer, that he owned the land on both sides of it, that it was about 1,000 feet in length, that he divided the land into lots, most of which were numbered, that he had a public sale of some of the lots in the fall of 1874, and made private sales of others at subsequent dates. It is also very plain that there were several cross streets, and that these were originally numbered, and subsequently named. The main controversy is over the location of Third street. Andrews' deed as amended called for Roanoke and Third streets, and there is "no dispute as to the location of Roanoke street." There is no ambiguity in the description of lot 19. Only one lot could occupy the northeast corner of the two streets. The location of Third street was a question of fact. There is some confusion in deeds made by Rorer as to the number of the cross-streets, but this confusion cannot affect the conveyance of lot 19, in the light of the facts. This lot and lot 28 just opposite it had been conveyed to Andrews by Rorer by deed dated December 29, 1874, and Andrews entered into immediate possession of both of them and built upon No. 28, and thereafter on April 17, 1877, seven years before the appellant's judgments were recorded, Rorer by his corrected description in ef-

fect says that lot No. 19 conveyed to Andrews, and of which he is now in possession, is located on Third street. Rorer, during this whole period, was a resident of Roanoke, or Big Lick, and was actively engaged in selling his lots as his various deeds of record will disclose. No matter what the street was called by other people, or even by Rorer elsewhere, he designates the street on which lot 19 is located as Third street, and the amended deed to Andrews shows this and was notice of that fact to subsequent purchasers from and creditors of Rorer. Not only so, but eleven days later, in conveying a lot on the same street to Wills, he designates the same street as Third street. That the street was designated as Third street was also testified to by Andrews, Gwathmey and Mrs. Luck, all old residents. Andrews goes further and states why it was designated as Third street. He says it was because it was the third street opened up counting from the railroad. Independently, however, of this testimony, the amended deed of Rorer to Andrews definitely located lot No. 19 as located on Roanoke street at its intersection with another street which Rorer designated as Third, and as it was the same lot of which Andrews had been in actual possession since receiving his deed in 1874, there can be no doubt as to the location of Third street. Of these facts the deeds from Rorer to Andrews gave constructive notice.

It is contended for the appellant, however, that what is called Third street in the amendment is what is now known as Church street, and not Luck street, and evidence is introduced to support that contention, including several deeds from Rorer in some of which Luck street is spoken of as Fourth street, and Church street as Third. But in addition to what has already been said on the subject, an inspection of the recorded deeds

from Rorer would show that lot 19 could not be located on the northeast corner of Roanoke and Church streets, because the deed to Andrews conveying lot 19 also calls for lot 28 on the opposite side of Roanoke street, and there were no numbered lots on the opposite side of Roanoke street from the lot on northeast corner of Roanoke and Church streets. The property opposite the last mentioned corner had no numbered lots at all, but had been sold and conveyed as a boundary of six and one-fourth acres to Gambill, by deed dated July 15, 1877, duly recorded. All of the conveyances referred to had been duly recorded seven years before appellant's judgments were recovered, or he had any rights in the premises.

[26, 27] It is insisted by the appellant, however, that the marginal correction made in 1877 before his judgments were recovered, did not carry constructive notice to him of the facts contained in that memorandum, on the ground that there was no law for recording such memorandum. It is true that this marginal correction is informal, but it was signed by Rorer and acknowledged by him before the clerk, and duly recorded in immediate connection with the deed. The statute authorized and required the clerk to record deeds and contracts for the sale of real estate, which were acknowledged before him, and whether this informal paper be considered and read into the deed as a part of it, or as a contract describing the land which was conveyed by the deed, in either event the clerk was authorized to record it, and the recordation carried as full notice and had as much effect as if it had been a more formal deed or contract written out, acknowledged and recorded by the clerk. The object of the conveyance in this instance was to give constructive notice of what was conveyed. The clerk was authorized to record a paper of that kind, and the recordation carried with it

the desired information as fully as if it had been formally set out in the deed in the first instance. The deed as thus amended conveyed a lot at the northeast corner of Roanoke and Third (or Luck) streets having a front of seventy-three feet and running back between parallel lines 147 feet to an alley. With knowledge of the location of the streets mentioned in the deed, no one would have had the least difficulty in locating exactly the lot conveyed. The deed gave the courses and distances, and the abutting streets and the lots were for years transferred by the commissioners of the revenue of Roanoke county on the land books simply by the lot numbers, so that that officer had no difficulty in locating the number. Furthermore, there is no evidence in the record that Rorer owned any other lot 19 on Roanoke street. Under these circumstances we are of opinion that lot 91 was sufficiently identified and passed under the deed aforesaid as mentioned from Rorer to Andrews, and is not liable to the judgments of the appellant.

[28] Lot No. 14 is now owned by the city of Roanoke and constitutes part of the lot upon which the municipal building of the city is situated. This lot is claimed under a deed made by Rorer to Martha B. Trout, dated August 28, 1882. The description of this lot is, "One certain lot or parcel of land together with all the appurtenances thereunto belonging. Said lot or parcel of land is situated in the town of Roanoke, State of Virginia, designated as lot No. 14 on the map and survey of town lots known as Rorer's Grove, bounded and described as follows, viz.: Commencing at the northeast corner of Roanoke street, thence N. 81¼° E. 147 ft. to an alley; thence S. 8¼° E. 73 ft. to corner of lot No. 15, thence S. 81¼° W. 147 ft. to Roanoke street; thence with the same N. 8¼° W. 73 ft. to the beginning." It is conceded that the beginning corner should be northwest corner of the lot instead of northeast.

In the petition for this appeal it is said, "There is in this description reference to both a named map and lot numbers, and there being testimony that there was such a map, the writer must in frankness say that to me this description appears sufficient, certainly as to purchasers, who, being put upon enquiry, and being affected by notice as to judgment lien creditors, would probably be held to knowledge of the map even though it was not of record.

"There remains the question, however, not thus far authoritatively decided in Virginia so far as the writer is aware, when a map is incorporated in a deed merely by a reference, and the map itself is neither of record with this deed or otherwise, the map being an essential part of the description, and without which the description is insufficient, whether the deed thus recorded in part is sufficient as against a judgment creditor." The map referred to was well known in the community at the time the deed was made, and the lot was also identified by reference to other conveyances made by Rorer of lots on Roanoke street. It was intimately tied up and connected with lot 15, the description of which has not been called in question. The deed from Rorer to Jamison conveying lot 15 is described as lying in Big Lick, designated as lot 15 in the plat of Rorer's Grove, beginning on the north side of Church street and east side of Roanoke street, giving the courses and distances. This readily identified lot 15 as on the northeast corner of Roanoke and Church streets. The northeast corner of lot 15 was the same as the southeast corner of lot 14, and if the line between the two lots as called for in the conveyance of lot 15, be reversed, the beginning of lot 14 on Roanoke street can be accurately fixed, and thus the whole of lot 14 accurately identified by the courses and distances given in the deed of Mrs. Trout.

Mrs. Trout went into possession of lot 14 immediately after getting her conveyance and she and those claiming under her have been in possession of the property and highly improved it without question from anybody from the day of her conveyance until the filing of the bill by the appellant. Under the circumstances of this case, we are satisfied that the conveyance to Mrs. Trout contained a sufficient description of the property and that the same is not liable to the lien of appellant's judgments.

[29] The Fallon lot sought to be subjected is a part of the lot conveyed by F. Rorer to W. L. Wills by deed bearing date April 28, 1877, about seven years before any of appellant's judgments were recovered. The ground of liability claimed is that the deed to Wills contains no adequate description of the property conveyed, and that the recordation thereof was void as to the appellant. The description given is, "One certain lot of land in the town of Big Lick containing the following dimensions:

"Beginning at 1, corner to *lot No. 28,* and on 3rd street; thence with said street S. 81½° W. 18 9-100 poles to 2; thence N. 8½° W. 4 42-100 poles or 73 feet to a stake at 3; thence N. 81½° E. 18 9-100 poles, or 298 feet, 4 inches to 4, corner to said lot No. 28; thence with same 73 feet to the beginning."

It is said that the beginning point is not fixed. The Wills lot is immediately in the rear of lot 28 on Third street. As we have seen lot 28 was conveyed to Andrews in the same deed with lot 19, and is on the opposite side of Roanoke street, and both lots have the same frontage on Roanoke street. In the discussion of the liability of lot 19, we arrived at the conclusion that Third street was the same as what is now called Luck street, and that lot 19 was situated at the northeast

corner of Roanoke and Third (or Luck) streets; and as lot 28 was on the opposite side of Roanoke street from lot 19, this placed lot 28 on the northwest corner of said two streets. The courses given in the deed to Wills shows that the lot conveyed to him was on the north side of Third (or Luck) street. The deed to lot 28 shows that it has a front of 100 feet on Third (or Luck) street, and as the beginning point of the Wills lot was the corner of lot 28 on Third (or Luck) street, it must have been 100 feet from the intersection of Roanoke and Third (or Luck) streets, thus fixing definitely the beginning point of the Wills lot. This being fixed, the courses and distances given in the deed to Wills accurately and definitely describe the lot conveyed. See map aforesaid.

It is true that the deed to Wills does not give any lot number, nor refer to any plot, nor even mention the State in which Big Lick is located, but this was unnecessary if the lot was otherwise sufficiently described, as we think it was. Rorer lived in the town of Big Lick, in the county of Roanoke, State of Virginia, and had lived there for many years, and he owned land there which he sold off in lots. It will be presumed, in the absence of evidence to the contrary, that when he conveyed a lot described as located in Big Lick, he had reference to the town in which he resided and owned real estate. Apart then from the deed of explanation of names of streets of 1895, the lot conveyed to Wills was sufficiently described to pass the title thereto, and consequently the lot aforesaid now held by Fallon is not subject to the lien of the judgments of the appellant.

The only remaining piece of property sought to be subjected is what is known in the record as the "Sauer lot," now occupied as a street by the city of Roanoke. This lot was conveyed by F. Rorer to George Sauer, Sr.,

by deed dated March 17, 1882, by the following description:

"A certain lot or parcel of land situated in the city of Roanoke, Virginia, described as follows:

"Beginning at a point on the north side of Salem avenue, corner to lot P. F. Van-Miller; thence north 5° 30 minutes E. 179½ feet to an alley (now Ernest avenue); thence S. 84° 30 minutes W. 30 feet to a corner; thence S. 5° 30 minutes W. 179½ feet to a corner on Salem avenue; thence with the same N. 84° 30 minutes east, 30 feet to the beginning."

Upon the death of Sauer, the lot was conveyed by his widow and heirs to the Exchange Lumber Company, by deed dated April 25, 1903. The Exchange Lumber Company conveyed to the Norfolk and Western Railway Company, and about 1912 the latter company dedicated it to the city of Roanoke as a public street, and thence hitherto the same has been, and is still, used and occupied by the city as a public street. It appears from Rorer's deed, and is undisputed, that the lot in controversy is located on the north side of Salem avenue, in the city of Roanoke. The claim of the parties respectively is illustrated by the diagram on the following page in which the dotted line indicates the Sauer lot as described in the deed from Rorer.

The location of the Van Miller lot was definitely fixed and settled, and there is no dispute about it. The claim of the appellant is that the description called for in the deed is the lot shown in the diagram as A, B, C, D, as the second call in the deed is for a direction west and the fourth call for a direction east, and this necessarily placed the Sauer lot on the west side of the Van Miller lot. This is conceded by the city, but its contention is that there was clearly and plainly a mistake in the direction of these two calls; that the beginning point

on the Van Miller lot should have been on the east side
of the lot, and the direction of the second call in the
deed should have been *east* and of the fourth call west,
thus placing the Sauer lot on the east side of the Van
Miller lot. Sauer entered into the possession of the lot
east of and adjoining the Van Miller lot immediately
after his purchase and erected a house thereon, and the
lot has been continuously since that time used and oc-
cupied by Sauer and those claiming under him until its

dedication as a public street as aforesaid. After the lot
was acquired by the Exchange Lumber Company the
alleged mistake in the courses aforesaid was discovered
and a suit was brought by the company against Rorer,
who was proceeded against by order of publication, as
he was a non-resident, to reform the deed and correct
the error aforesaid. The judgment creditors of Rorer
were not made parties to that suit. An order was made
reforming the deed and correcting the mistake, and a

commissioner of the court was directed to make, and did make, a deed to the Exchange Lumber Company in accordance with the decree of the court, conveying to that company the lot on the east side of the Van Miller lot. The deed from the commissioner of the court, however, was not recorded until after all of the judgments of the appellant had been docketed.

[30] As the appellant was not a party to the suit for a reformation, he is not bound by any of the proceedings therein. Under the terms of the statute (Code 1875, ch. 114 sec. 5) the deed in the suit for reformation was void as to the lien creditors of Rorer, with or without notice, unless and until duly admitted to record, and this was not done until after the judgments of the appellant were docketed. *Eidson* v. *Hoff*, 29 Gratt. (70 Va.) 342; *Price* v. *Wall's Ex'r*, 97 Va. 336, 33 S. E. 599, 75 Am. St. Rep. 788; *Flanery* v. *Kane*, 102 Va. 561, 46 S. E. 312, 681.

[31] The chief contention of the city is that all of the lots west of the Van Miller lot in that block had been previously conveyed by Rorer to other purchasers whose deeds had been duly recorded, and that the deed to Sykes, which was duly recorded, showed that there was conveyed to him the lot immediately on the west side of, and adjoining, the Van Miller lot, and that this demonstrated the error in the Sauer deed in the two courses mentioned, and was notice of the facts to the appellant. It might probably be said, with equal propriety, that it demonstrated the error in the Sykes deed. The description given in the Sauer deed accurately and properly described the lot on the west side of the Van Miller lot, and no other lot. The calls of the deed are consistent with each other. They exactly close and fit the lot on the west side of the Van Miller lot, without doubt, uncertainty or ambiguity, and could

not be made to fit the lot on the east side of the Van
Miller lot without changing two of the four calls given
in the deed. In such case, parol evidence is not ad-
missible, as against judgment creditors of the grantor,
to show that the grantor intended to convey and the
grantee to purchase some other lot than the one so de-
scribed. The deed to Sauer did not point out any
other means of identifying the lot conveyed than the
Van Miller lot on the north side of Salem avenue and
the courses and distances given in that deed, and with
these only was the appellant charged with constructive
notice.

[32] In 4 R. C. L. p. 125, sec. 65, it is said, among
other things, "Where the description of premises con-
veyed in a deed is definite, certain and unambiguous,
extrinsic evidence cannot be introduced to show that
it was the intention of the grantor to convey a different
tract. Thus where the land is described by courses and
distances parol evidence is inadmissible to prove that
the true boundary is a line of marked trees not men-
tioned in the deed, or that a deed stating a definite
course was intended to express another, or to alter or
vary the legal import of monuments the location of
which has been ascertained. If the calls in the grant
when applied to the land correspond with each other,
parol evidence will not be admitted to vary them by
showing that in point of fact they are not the calls of
the survey as actually made." See also 8 R. C. L. sec.
95, and cases cited.

[33] In *Hines* v. *Robinson*, 57 Me. 324, 330, 99 Am.
Dec. 772, 773, in speaking of the intention of the par-
ties in making a deed, it is said: "Their intention must
be ascertained from the writing itself, which in such
cases is the best and only legal evidence of it. A deed,
which, through the ignorance or heedlessness of the

scrivener, misrepresents the bargain between the parties, may doubtless be reformed in equity, but until that is done it must be allowed to have in a suit at law all its legitimate effect according to its terms." Of course, as the deed to Sauer on its face conveyed the lot on the west side of the Van Miller lot, its recordation would not be constructive notice of the conveyance of the lot on the east side of the Van Miller lot. As to the appellant there are no conveyances by Rorer of the lot on the east side of the Van Miller lot, and the result is that the lot on the east side of the Van Miller lot is liable to the lien of the appellant's judgments.

It appears from the record that the whole of the lot on the east side of the Van Miller lot was dedicated by the Norfolk and Western Railway Company to the city of Roanoke as a public street in 1912; that the dedication was accepted by the city and the lot has been used as a public street from that time until now. It does not appear what, if any, other rights the city has to that lot and that question appears not to have been adjudicated by the trial court. Decrees of the trial court dismissing appellant's suit as to all of the appellees will be affirmed except as to the city of Roanoke and as to the latter also, except as to the lot on Salem avenue, on the east side of the Van Miller lot. So far as this lot is affected by the lien of appellant's judgments the decree of the October term, 1920, will be reversed and the cause remanded with directions to the trial court to subject said lot to the lien of the judgments of the appellant, subject to whatever rights the city of Roanoke may have therein, if any, otherwise than in consequence of its user of said lot as a public street since 1912.

All of the appellees in this case, except the city of Roanoke, are entitled to recover their costs against the

appellant.   The costs of the appellant have been largely
incurred in his efforts to subject to the lien of his judg-
ments the real estate of the appellees other than the
city of Roanoke, in which efforts he has failed.   He also
sought to subject to his judgments three pieces of the
property claimed by the city, but we have held that
two of these, probably the most valuable, are not liable.
Under these circumstances, we are of opinion that the
costs of the appellant in this court should be appor-
tioned, and that appellant should recover of said city
only one-fourth of said costs.

*Reversed in part and affirmed in part.*